Gerald Wayne SAUMTY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17250.

Court of Criminal Appeals of Oklahoma.

Nov. 15, 1972.

Wilbert Montell BROWN, Appellant,

v.

Leslie D. Page, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Gerald Wayne Saumty, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Kay County, for the offense of Grand Larceny; his punishment was fixed at three (3) years imprisonment, and from said judgment and sentence, a post conviction appeal has been perfected to this Court.

At the trial, Russell Holmes testified that on May 17, 1969, he worked at a Phillips 66 Service Station at Interstate 35 and Highway 11. Sometime after midnight, a car containing the defendant and several other people drove into his service station and parked on the west side. The defendant and a young Indian girl came back to the wash bay area where he and his wife were sorting out shotgun shells. The defendant complained of recent car trouble and talked for approximately three or four minutes. He started to leave and returned, again repeating his complaints about the car trouble. The car backed out and pulled into the pump area. The horn honked and the defendant left. Holmes checked the tire rack and discovered that five new tires were missing, whereupon he immediately called the Blackwell Police Department. He testified that the value of the tires was somewhere between Thirty and Forty Dollars per tire.

Carolyn Holmes testified that she was Russell's wife and was with him at the station on the evening in question. Her testimony did not differ substantially from that of her husband.

Harold Krout testified that he was employed as a police officer for the City of Perry. On the morning in question, he received a radio call from Blackwell concerning a tire theft and a description of a vehicle. At approximately 1:15 a. m., he observed a vehicle matching the description coming from the north on Interstate 35. He stopped the vehicle, which was occupied by the defendant, Tommy Bighead, James Fourkiller, Richard Sawyer and Verna Beaver. He searched the car and observed five Phillips 66 tires in the trunk. (The tires had previously been identified by Russell Holmes as being the tires that were missing.)

Officer Pritchett testified that he arrived at the scene shortly after Krout stopped the vehicle. He subsequently assisted Krout in writing down the serial numbers of the tires.

Sheriff Coffelt and Agent Key testified concerning the chain of custody of the tires.

Co-defendant Richard Sawyer testified that he was currently incarcerated at Granite Reformatory on the Grand Larceny charge. On the evening in question, he, Leroy Bradsher, Tommy Bighead, James Fourkiller and Wahillai Doonkeen left Oklahoma City and drove to Alva. They were drinking whiskey and beer. He drove the car into the service station and parked at the side. He, Bradsher and Fourkiller went into the men's room. When he returned, the defendant told him "that the attendant was there in the back room and he was working on a car and he would keep him busy there while I took what I could." (Tr. 184) He took the five tires and placed them in the car while the defendant was talking to attendant in the lube room. He pulled to the front of the station and honked for the defendant. He admitted that he testified at the preliminary hearing that the defendant had not suggested that he commit the crime.

For the defense, Tommy Bighead testified that he was with the Co-defendant Sawyer and the others on the evening in question. Prior to leaving Oklahoma City, they bought some whiskey. On the way to Alva they had car trouble and had to call a wrecker. He went to sleep in the back of the car and did not wake up until he was in jail in Perry.

James Fourkiller testified that he was with the others on the evening in question. They bought whiskey in Oklahoma City and some beer in Alva. They stopped at the service station because the defendant was going to see what was wrong with the car as they had been having car trouble. He did not hear any conversation between the defendant and Sawyer concerning stealing anything. He went to the bathroom and when he returned, he observed two tires in the back seat. After leaving the station, the defendant "got kind of mad because Richard took the tires."

Wahillai Doonkeen testified that she went to Alva with the other subjects. They subsequently stopped at the filling station because someone wanted to go to the bathroom. She and the defendant talked to the service station attendant because the defendant wanted to know what was wrong with the car. She testified that she did not hear any conversation between the defendant and Sawyer concerning stealing tires. After they left the station, she called defendant's attention to the tires in the car. The defendant said that Richard was a "dumbhead and stupid." She testified that after they were stopped by the officers she identified herself as Verna Beaver.

The first proposition asserts that the trial court erred in refusing to grant defendant's motion for continuance. The record reflects that the cause was originally scheduled for a jury trial on October 10, 1969. On October 8, 1969 the defendant made an oral motion for continuance based upon illness of counsel. The motion was granted and the case was reset for October 16, 1969. A written motion for continuance was filed by defendant on October 15, 1969, with a letter from the attending physician attached thereto, which stated that his attorney was unable to proceed to trial because of illness. The motion was denied. The defendant argues that the court abused its discretion in denying the continuance in that "counsel cannot be totally effective when he is ill during the trial." We have carefully reviewed the lengthy record and are of the opinion that the trial court did not abuse its discretion in denying the motion for continuance. Defendant's attorney was extremely competent in cross-examination and re-cross examination of the State's witnesses. The attorney presented defendant's evidence in the best possible light. The only further reflection that the attorney was ill during the course of the trial was when he requested one recess to get something for his throat. (Tr. 275) We, therefore, find this proposition to be without merit.

The second proposition contends that the trial court erred in refusing to ad-

mit the testimony given by Leroy Bradsher at the preliminary hearing. The record reflects that the following transpired at the trial:

"JUDGE MARIS: You may stand aside —call your next witness.

"MR. GRAHAM: Your Honor, we have made a diligent search to find LeRoy Bradsher and we would like to offer the testimony he made under oath on July 8, 1969, in the deposition.

"JUDGE MARIS: Diligence is a matter of record and the court file will reflect what diligence is. His statements regarding the cases I have read on diligence means little or nothing—if he has made diligence I will point it out to the court in the court file.

"MR. GRAHAM: It is not the only record that might be obtained—we have searched his home—Mr. Saumty talked to him two weeks ago at his home and he said he would be here, but he has moved. We have made every effort that we could to have him here and the State of Oklahoma also issued their subpoenas and they have not been returned.

"JUDGE MARIS: Did you issue a subpoena for him?

"MR. WELCH: Yes, sir.

"JUDGE MARIS: Have one pointed out to the court.

"MR. GRAHAM: It was just issued yesterday, Your Honor.

"JUDGE MARIS: I believe that has come before the Court of Criminal Appeals, too. The motion to read the deposition or the testimony at the preliminary hearing will be denied and an exception allowed. * * *" (Tr. 301–303)

In the recent case of Holmes v. State, Okl.Cr., 501 P.2d 830, wherein the cause was reversed for permitting the State to introduce testimony taken at a preliminary hearing without showing diligence in attempting to locate the witness, we stated:

" * * * At the trial, although the Assistant District Attorney stated that he was prepared to offer testimony as to the unavailability of the witness, *no testimony was offered*. We are of the opinion that the showing of due diligence to prove the unavailability of a witness requires more from the State than the mere issuance of a subpoena and the return of 'Not found.' Testimony should have been offered as to what efforts, if any, were made to serve the subpoena and the ultimate fact that the witness was unavailable to testify. * * *" (Emphasis ours.)

In the instant case, there was no *testimony* as to what efforts were made to locate the witness and, further, there was no testimony that the witness was, in fact, unavailable. We, therefore, find this proposition to be without merit.

■ The third proposition asserts that the trial court by failing to grant a mistrial because of improper and prejudicial portions of the testimony of Richard Sawyer. Defendant argues that on two occasions Sawyer volunteered statements that the defendant was on a suspended sentence, thus placing his character in issue. The record reflects that on cross-examination the defendant asked the following question:

"Q. * * * Did you try to get Mr. Bradsher to take the blame for stealing the tires?

"A. Well, see, I didn't have much time to talk to him because the law men just ·left us alone for a minute, and I said— Gerry was standing there with me, and I said me and Saumty—me and Gerry are on a suspended sentence—I said if we get busted now we'll get that five years plus what we get here—I said you go ahead and take the rap. * * *" (Tr. 244–245)

The defendant did not object to this answer nor did he move for a mistrial. On re-direct examination, the State asked the following question:

"Q. Did I understand you to say to Mr. Graham's question that you tried to get a

Mr. Bradsher to take the rap for this at one time?

"A. Yes, sir, I did.

"Q. And why was that?

"A. Because me and Gerry was on a five-year suspended sentence.

"MR. GRAHAM: Judge, I'm going to object to that—just a minute—I'm going to object to any answers that correspond except to what he says of Mr. Bradsher.

"JUDGE MARIS: You brought that same statement out on Cross Examination.

"MR. WELCH: Well, he brought it up, Your Honor.

"MR. GRAHAM: I would like to have an exception if I'm going to be overruled on that.

"JUDGE MARIS: It will be overruled because you brought that up on Cross Examination." (Tr. 259–260)

In Kolke v. State, Okl.Cr., 493 P.2d 854, we stated:

" * * * We need only to observe that it was the defendant that brought out on cross examination that the defendant was charged and tried with a similar offense occurring on the same day. The defendant introduced as evidence an Information reflecting that the defendant was charged with the same offense, occurring on the same date. This Court has previously frowned on 'laying behind the log' tactics of defense counsel by creating error, and then complaining of such on appeal. Ferrell v. State, Okl. Cr., 475 P.2d 825 (1970)."

■ The final proposition contends that the punishment is excessive. We need only observe that the punishment is well within the statutory limits and does not shock the conscience of this Court.

The judgment and sentence is affirmed.

BRETT, J., concurs.